1

2

3

4

5               UNITED STATES DISTRICT COURT

6               EASTERN DISTRICT OF WASHINGTON

7   BABCOCK SERVICES, INC,

                                          NO:  13-CV-5093-TOR
8                        Plaintiff,

                                          ORDER GRANTING PLAINTIFF'S
9        v.                               MOTION TO REMAND

10  CH2M HILL PLATEAU
    REMEDIATION COMPANY, INC.,
11
                         Defendant.
12

13        BEFORE THE COURT is Plaintiff's Motion to Remand (ECF No. 6).  This

14  matter was submitted for consideration without oral argument.  The Court has

15  reviewed the briefing and the record and files herein, and is fully informed.

16                          BACKGROUND

17        Plaintiff Babcock Services, Inc. ("BSI") filed this action in Benton County

18  Superior Court, asserting state law breach of contract claims arising from alleged

19  violations of a subcontract between itself and Defendant CH2M Hill Plateau

20  Remediation Company, Inc. ("CHPRC").  CHPRC timely removed the case to this

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 1

1   Court pursuant to 28 U.S.C. § 1441(a).  ECF No. 1.  Plaintiff subsequently moved

2   to remand the case for lack of subject-matter jurisdiction.  ECF No. 6.  For the

3   reasons discussed below, the Court concludes that CHPRC has failed to carry its

4   burden of establishing federal subject matter jurisdiction.  Accordingly, the case

5   will be remanded to Benton County Superior Court for all further proceedings.

6                                                  FACTS

7          CHPRC contracts with the Department of Energy ("DOE") to provide

8   environmental cleanup of the Hanford Site in Richland, Washington.  In 2008,

9   CHPRC entered into a subcontract (the "Shared Resource Agreement" or "SRA")

10  with BSI for various professional services.  The subcontract's "base period" ran

11  from October 2008 to September 2013.  The subcontract also provided for an

12  "option period" extending from October 2013 to September 2018.

13         According to BSI, the parties agreed that the subcontract would continue

14  through the option period unless it was specifically terminated for convenience by

15  the DOE.  In support of this assertion, BSI cites the subcontract's termination

16  clause, which provides:

17          The subcontract may be terminated at any time by mutual agreement
            of the Parties.  It is anticipated that this subcontract shall continue
18          [for] the duration of the CHPRC Contract and any extension thereof,
            unless during the term of the subcontract, DOE directs in writing the
19          termination of the Subcontract in accordance with FAR 52.249-6 or
            unless DOE removes substantially all the Subcontractor scope of work
20          [from] the Prime Contract.  Buyer will terminate by delivering to the

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 2

1   Contractor a Notice of Termination for Convenience specifying the extent of termination and the effective date.

2

3   Despite this agreement, BSI alleges, CHPRC declined to extend the subcontract into the option period.  BSI claims that this decision was not prompted

4

5   by a termination of the subcontract for convenience by the DOE or by a removal of substantially all of BSI's scope of work from the prime contract.

6

7   BSI further alleges that, after deciding not to extend the subcontract, CHPRC actively solicited BSI employees in violation of the subcontract's non-

8

9   solicitation clause.  The non-solicitation clause provides:

10  During the term of the SRA, neither Party shall, without the written approval of the other party, directly or indirectly or through the use of a third party, solicit for employment an employee of the other Party.

11  This prohibition shall extend for a period of ninety (90) days after the employee terminates employment with the other Party.  The foregoing

12  shall not apply to employees of either Party who have not been substantially involved in the performance of the initial Teaming

13  Agreement or PRC Project, clerical or administrative employees, or individuals hired as a result of the use of a general solicitation (e.g.,

14  PRC solicitation) not specifically directed to the employees of the other Party.

15

16  BSI filed the instant lawsuit in Benton County Superior Court, alleging state

17  law breach of contract claims.  After being served with the Complaint, CHPRC

18  removed the case to this Court on federal question grounds.  BSI now moves to

19  remand the case for lack of subject matter jurisdiction.

20  //

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 3

1                              DISCUSSION

2          CHPRC removed this case from state court pursuant to 28 U.S.C. § 1441(a)

3     on the ground that BSI's claims present a federal question.  Section 1441(a) allows

4     removal of "any civil action brought in a State court of which the district courts of

5     the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Pursuant to 28

6     U.S.C. § 1331, federal district courts have original jurisdiction over all claims

7     "arising under the Constitution, laws, or treaties of the United States."

8          Whether a suit "arises under" federal law is determined by the well-pleaded

9     complaint rule, which provides that federal jurisdiction exists "only when a federal

10    question is presented on the face of the plaintiff's properly pleaded complaint."

11    *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "Because a defense is not

12    part of a plaintiff's properly pleaded statement of his or her claim, a defense that

13    raises a federal question is inadequate to confer federal jurisdiction."  *Wash.*

14    *Consulting Grp., Inc. v. Raytheon Technical Servs. Co., LLC*, 760 F. Supp. 2d 94,

15    100 (D. D.C. 2011) (internal quotations and citations omitted).  As a result, under

16    the well-pleaded complaint rule, "the plaintiff is the master of his complaint and

17    may avoid federal jurisdiction by relying exclusively on state law."  *Hunter v.*

18    *Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quotations and citation

19    omitted).

20

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 4

1    There are two ways in which a claim can "arise under" federal law.  "Most

2    directly, a case arises under federal law when federal law creates the cause of

3    action asserted."  *Gunn v. Minton*, --- U.S. ---, 133 S. Ct. 1059, 1064 (2013).  Such

4    claims "account[] for the vast bulk of suits that arise under federal law."  *Id.*  In a

5    much narrower category are state law claims that "implicate significant federal

6    issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308,

7    312 (2005); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S.

8    677, 699 (2006) (explaining that such claims are in a "special and small category"

9    of federal "arising under" jurisdiction).  Claims in this category fall within a

10   limited exception to the well-pleaded complaint rule, which is grounded in "the

11   commonsense notion that a federal court ought to be able to hear claims recognized

12   under state law that nonetheless turn on substantial questions of federal law, and

13   thus justify resort to the experience, solicitude, and hope of uniformity that a

14   federal forum offers on federal issues."  *Id.*  To fall within this so-called

15   "substantial federal question" exception, a state law claim must present a federal

16   issue which is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

17   capable of resolution in federal court without disrupting the federal-state balance

18   approved by Congress."  *Gunn*, 133 S. Ct. at 1064 (citing *Grable*, 545 U.S. at 314).

19        At issue in the instant motion is whether Plaintiff's state law claims raise an

20   issue of federal law that is "substantial" enough to warrant the exercise of federal

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 5

1  question jurisdiction.  As the party that removed the case from state court, CHPRC

2  bears the burden of demonstrating that the exercise of federal question jurisdiction

3  is proper.  *Hunter*, 582 F.3d at 1042.  There is a "strong presumption" against

4  removal.  *Id.*  Any doubts about the propriety of the removal must be resolved in

5  favor of remand.  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th

6  Cir. 2009).

7  **A. Substantial Federal Question Jurisdiction**

8  CHPRC asserts that the Shared Resource Agreement, as a subcontract let

9  under a prime contract with the federal government, is governed by federal law.

10  ECF No. 1 at 4.  Citing to *American Pipe & Steel Corp. v. Firestone Tire &*

11  *Rubber Co.*, 292 F.2d 640 (9th Cir. 1961) and *New SD, Inc. v. Rockwell Int'l*

12  *Corp.*, 79 F.3d 953 (9th Cir. 1996), CHPRC argues that the federal government has

13  a strong interest in having disputes relating to such contracts adjudicated uniformly

14  in federal court.  This interest, CHPRC contends, warrants the exercise of

15  "substantial federal question" jurisdiction over BSI's claims.  ECF No. 10 at 8-10.

16  At first glance, *American Pipe* and *New SD* appear to support CHPRC's

17  assertion that this case presents a substantial federal question.  In *American Pipe*, a

18  diversity case, the Ninth Circuit chose to apply federal law rather than California

19  law to claims arising from an alleged breach of a subcontract for the manufacture

20  of missile containers for the federal government.  292 F.2d at 644.  In reaching this

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 6

1    decision, the court noted that the plaintiff's requested remedy—an "equitable

2    adjustment" in the subcontract price—would result in increased national security

3    costs to the federal government. *Id.*  In light of Congress's expressed desire to

4    reduce national security costs, the court reasoned, the federal government had a

5    substantial interest in having such cases adjudicated "uniform[ly] throughout the

6    country." *Id.* at 643.  Thus, the court concluded that "the construction of contracts,

7    let under prime contracts connected with the national security, should be regulated

8    by a uniform federal law." *Id.*

9         In *New SD*, the Ninth Circuit was asked to decide whether the federal

10    government's interest in uniform adjudication of government contract disputes

11    between private parties could support the exercise of federal question jurisdiction

12    over state law breach of contract claims.  As in *American Pipe*, the plaintiff's claim

13    was for breach of a subcontract let under a prime government contract which

14    implicated national security.  *New SD*, 79 F.3d at 955.  After reviewing its prior

15    decision in *American Pipe*, the court concluded that the case could not be

16    "meaningfully distinguish[ed]." *Id.*  Thus, the court held that federal question

17    jurisdiction had been properly established:

18         [O]n government contract matters having to do with national security,
             state law is totally displaced by federal common law.  Where the

19         federal interest requires that "the rule must be uniform throughout the
             country," as we said was the case in *American Pipe*, then the entire

20         body of state law applicable to the area conflicts and is replaced by
             federal rules." [*Boyle v. United Techs. Corp.*, 487 U.S. 500, 508

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 7

1    (1988)].  When federal law applies, as *American Pipe* holds that it
     does to this type of contract, it follows that the question arises under
2    federal law, and federal question jurisdiction exists.

3    *Id.* (internal quotations and citations omitted).

4        Having carefully reviewed these and other applicable authorities, however,

5    the Court concludes that *American Pipe* and *New SD* do not support the exercise of

6    federal question jurisdiction.  As an initial matter, both cases were decided before

7    the Supreme Court's decisions in *Grable* and *Empire*, which clarified the proper

8    scope of the substantial federal question doctrine.  In *Grable*, the Court granted

9    certiorari to review its jurisdiction over a state law quiet title action which required

10   an interpretation of a federal tax statute.  The Court began by emphasizing that the

11   mere presence of a federal issue is insufficient "to open the 'arising under' door."

12   *Grable*, 545 U.S. at 313.  To warrant the exercise of federal question jurisdiction,

13   the Court explained, the federal issue must be "a *substantial* one, indicating a

14   *serious federal interest* in claiming the advantages thought to be inherent in a

15   federal forum."  *Id.* (emphasis added).

16       The Court further emphasized that, before exercising jurisdiction over a state

17   law claim on substantial federal question grounds, a district court must consider the

18   potential for disruption of the balance of power between state and federal

19   government:

20       Because arising-under jurisdiction to hear a state-law claim always
         raises the possibility of upsetting the state-federal line drawn (or at

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 8

1   least assumed) by Congress, the presence of a disputed federal issue
    and the ostensible importance of a federal forum are never necessarily
2   dispositive; there must always be an assessment of any disruptive
    portent in exercising federal jurisdiction.
3

4   *Id.* at 314.  With these principles in mind, the Court framed the substantial federal

5   question inquiry as follows: "[D]oes a state-law claim necessarily raise a stated

6   federal issue, actually disputed and substantial, which a federal forum may entertain

7   without disturbing any congressionally approved balance of federal and state judicial

8   responsibilities[?]"  *Id.*

9          Turning to the merits of the case, the Court found that federal jurisdiction

10  had been properly established.  In reaching this conclusion, the Court noted that the

11  state claim hinged on whether the IRS had properly served the plaintiff with notice

12  of a tax sale under federal law.  *Id.* at 314-15.  This question, the Court reasoned,

13  implicated an important federal issue that could be adjudicated in federal court

14  without upsetting the balance of state and federal power:

15          The meaning of the federal tax provision is an important issue of
        federal law that sensibly belongs in a federal court.  The Government
16      has a strong interest in the prompt and certain collection of delinquent
        taxes, and the ability of the IRS to satisfy its claims from the property
17      of delinquents requires clear terms of notice to allow buyers like [the
        defendant] to satisfy themselves that the Service has touched the bases
18      necessary for good title.  The Government thus has a direct interest in
        the availability of a federal forum to vindicate its own administrative
19      action, and buyers (as well as tax delinquents) may find it valuable to
        come before judges used to federal tax matters.  Finally, because it
20      will be the rare state title case that raises a contested matter of federal

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 9

1    law, federal jurisdiction to resolve genuine disagreement over federal
     tax title provisions will portend only a microscopic effect on the
2    federal-state division of labor.

3    *Id.* at 315 (internal quotation and citation omitted).

4    *Empire* was decided one year after *Grable*.  In that case, a health insurance

5    carrier for federal employees filed suit in federal court, seeking reimbursement of

6    health insurance benefits paid on behalf of its insured after the insured's estate

7    negotiated a substantial settlement in a state-law tort action.  The insurer, which

8    was under contract with the federal government, argued that federal question

9    jurisdiction existed under *Grable* because federal law provided a necessary

10   element of its claim for relief.  *Empire*, 547 U.S. at 699.  The Court rejected this

11   argument, explaining that the case was "poles apart from *Grable*."  *Id.* at 700.

12   First, the Court noted that *Grable*, unlike the case before it, "centered on the action

13   of a federal agency (IRS) and its compatibility with a federal statute."  *Id.*  Second,

14   the Court explained that the "substantial" federal question at issue in *Grable* "was

15   both dispositive of the case and would be controlling in numerous other cases"—a

16   description which did not apply to the "bottom-line practical issue" of whether the

17   insurer was entitled to a share of the settlement proceeds.  *Id.*  Finally, the Court

18   reasoned that while *Grable* presented "a nearly pure issue of law," the case before

19   it was "fact-bound and situation-specific."  *Id.* at 700-01 (citation omitted).  Thus,

20

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 10

1  the Court concluded that the insurer's claim for reimbursement could not be

2  "squeezed into the slim category *Grable* exemplifies."  *Id.* at 701.

3          As illustrated above, *American Pipe* and *New SD* rest on a single premise:

4  that private disputes relating to a government contract should be uniformly

5  adjudicated in federal court when "the cost of national security stands to be

6  increased in the process."  *New SD*, 79 F.3d at 955 (citing *American Pipe*, 292 F.2d

7  at 644).  Under *Grable* and *Empire*, this premise is no longer sound.  For one thing,

8  neither *American Pipe* nor *New SD* addresses the potential for disruption of the

9  balance of power between state and federal government.  This is a crucial

10  component of the substantial federal question analysis; as the Court explained in

11  *Grable*, "the presence of a disputed federal issue and the ostensible importance of a

12  federal forum are *never necessarily dispositive*; there must always be an

13  assessment of any disruptive portent in exercising federal jurisdiction."  545 U.S.

14  at 314 (emphasis added).  As at least one other court has recognized, the reasoning

15  in *New SD* could support the exercise of federal jurisdiction in virtually *any* case

16  involving a government contract.  *See Woodward Governor Co. v. Curtiss Wright*

17  *Flight Sys., Inc.*, 164 F.3d 123, 128 (2d Cir. 1999) ("[T]he reasoning behind *New*

18  *SD* is, in our opinion, flawed.  While there is no question that contracts relating

19  *directly* to government liability for procurement decisions are governed by federal

20  common law, the issue gets muddier as the contract gets further removed from the

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 11

1   government.") (emphasis in original).  Because the reasoning in *American Pipe*

2   and *New SD* cannot accommodate a case-by-case balancing of competing state and

3   federal interests, there is reason to believe that the Supreme Court would reject it.

4   Furthermore, under *Empire*, the mere potential for increased costs to the

5   federal government does not automatically warrant uniform adjudication of private

6   contract disputes.  Although *Empire* did not specifically address the issue, the

7   Court's refusal to allow a government contractor to recoup its expenses in federal

8   court is instructive.  Given that a federal contractor's attempt to recover *funds paid*

9   *pursuant to a federal contract* does not trigger the federal government's interest in

10  uniform adjudication, the need for uniformity can hardly support the exercise of

11  federal question jurisdiction over disputes in which the government's financial

12  interest is more attenuated.

13  In any event, assuming for the sake of argument that *American Pipe* and

14  *New SD* remain good law, the cases are distinguishable from the instant case.

15  Unlike the prime contracts in those cases, the contract between CHPRC and the

16  Department of Energy does not implicate national security interests.  Thus, the

17  government does not have the same "substantial" interest in uniform adjudication

18  that existed in *American Pipe* and *New SD*.  *See Vetro, Inc. v. Active Plumbing and*

19  *Heating, Inc.*, 403 F. Supp. 2d 1033, 1038 (D. Colo. 2005) (distinguishing *New SD*

20  on the ground that a government contract for renovation of a building at the Air

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 12

1   Force Academy did not concern matters of national security).  As BSI correctly

2   notes, accepting CHPRC's theory of removal in this case would effectively open

3   the door to federal question jurisdiction in any breach of contract case involving a

4   subcontract let under a prime government contract.  Such a result would be directly

5   at odds with the Supreme Court's directives in *Grable* and *Empire* that the

6   substantial federal question doctrine be construed narrowly.  Accordingly, the

7   Court concludes that CHPRC has failed to carry its burden of demonstrating that

8   this case was properly removed.  The case will be remanded to the Benton County

9   Superior Court for all further proceedings.

10          **B.  Attorney's Fees and Costs**

11          BSI has requested an award of attorney's fees and costs pursuant to 28

12   U.S.C. § 1447(c).  Section 1447(c) provides, in relevant part, that "[a]n order

13   remanding [a] case may require payment of just costs and any actual expenses,

14   including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).

15   "Absent unusual circumstances, courts may award attorney's fees under § 1447(c)

16   only where the removing party lacked an objectively reasonable basis for seeking

17   removal.  Conversely, where an objectively reasonable basis exists, fees should be

18   denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The Court

19   finds that CHPRC had an objectively reasonable basis for removing this case under

20

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 13

1   the Ninth Circuit's decisions in *American Pipe* and *New SD*.  Accordingly, BSI's

2   request for attorney's fees and costs is denied.

3   **IT IS HEREBY ORDERED:**

4        Plaintiff's Motion to Remand (ECF No. 6) is **GRANTED**.  This case is

5   hereby **REMANDED** to the Benton County Superior Court for all further

6   proceedings.

7        The District Court Executive is hereby directed to enter this Order, furnish

8   copies to counsel, <u>mail a certified copy to the Clerk of the Benton County Superior</u>

9   <u>Court</u>, and **CLOSE** the file.

10       **DATED** October 21, 2013.

11

12                              THOMAS O. RICE
                          United States District Judge

13

14

15

16

17

18

19

20

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ~ 14